UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DISTRICT OF COLUMBIA, | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| v. | ) | Civil Action No. 13-1008 (PLF) |
| GREGORY MASUCCI, *et al.*, | ) | |
| Defendants/Counter-Claimants. | ) | |
| MIKEISHA BLACKMAN, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 97-1629 (PLF) |
| DISTRICT OF COLUMBIA, *et al.*, | ) | Claim of Gregory Masucci and Maya Weschler, next friends of M.M. |
| Defendants. | ) | |

OPINION

On May 29, 2013, a hearing officer in the District of Columbia's Office of the State Superintendent of Education ordered the District of Columbia Public Schools ("DCPS") to provide special needs student M.M. with one year of compensatory education services at a private school for children with autism. Convinced that the hearing officer's determination ("HOD") was erroneous, the District appealed the HOD in this Court and refused to comply with the HOD pending appeal. Concerned that M.M. would lose his spot at Ivymount School, a private school that met the requirements specified in the HOD, M.M.'s parents enrolled M.M. at Ivymount and began paying the school's tuition and fees themselves. Using the procedural

mechanism available in a separate, related class action, Blackman v. District of Columbia, Civil Action No. 97-1629, the parents also filed a motion for a preliminary injunction order directing DCPS to place and fund M.M. at Ivymount, and to reimburse the parents for expenses incurred. Several weeks later, the District moved in Civil Action No. 13-1008 for a stay of the HOD pending this appeal.

Upon review of the parties' papers and the relevant legal authorities, the Court finds that the District has established that a prospective stay of the HOD is warranted. The Court also finds, however, that the District had an obligation to comply with the HOD – *i.e.*, by placing M.M. at a private school meeting the criteria specified in the HOD – unless and until the District was granted a stay by this Court. The District therefore will be directed to reimburse M.M.'s parents for tuition and related expenses incurred between July 8, 2013 and February 14, 2014.[1]

---

[1] The papers reviewed in connection with the pending motions include the following documents, filed in Blackman v. District of Columbia, Civil Action No. 97-1629: the parents' motion for a preliminary injunction ("PI Mot.") [Dkt. No. 2328]; the District's response to the parents' preliminary injunction motion ("PI Opp'n") [Dkt. No. 2332]; the parents' reply in support of their preliminary injunction motion [Dkt. No. 2333]; the report and recommendations of the Special Master ("R&R") [Dkt. No. 2346]; the parents' motion to adopt in part and objections in part to the Special Master's report and recommendations [Dkt. No. 2364]; the District's objections to the Special Master's report and recommendations [Dkt. No. 2372]; the District's response to the parents' objections [Dkt. No. 2376]; and the supplemental report of the Special Master [Dkt. No. 2379]. The papers reviewed also include the following documents, filed in District of Columbia v. Masucci, Civil Action No. 13-1008: the District's complaint [Dkt. No. 1]; the administrative record ("AR") [Dkt. No. 7-1 to 7-9]; the administrative due process complaint notice ("Due Process Compl.") [Dkt. No. 7-1] at AR 5-17; the hearing officer's determination of May 28, 2013 ("HOD") [Dkt. No. 7-6] at AR 898-934; the transcript of the May 8, 2013 due process hearing ("May 8 Tr.") [Dkt. No. 7-8]; the transcript of the May 9, 2013 due process hearing ("May 9 Tr.") [Dkt. No. 7-9]; the District's motion for a stay ("Stay Mot.") [Dkt. No. 15]; the parents' opposition to the District's stay motion ("Stay Opp'n") [Dkt. No. 18]; and the District's reply in support of its stay motion ("Stay Reply") [Dkt. No. 20].

I.  BACKGROUND

M.M. is a five-year-old child residing with his parents, Gregory Masucci and Maya Weschler, in the District of Columbia.  R&R 2.  M.M. is autistic and has Attention Deficit Hyperactivity Disorder, and he is disabled within the meaning of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*.  Id.  In an effort to address M.M.'s special needs, DCPS placed M.M. in an autism program at Tyler Elementary School ("Tyler"), a public school.  Id.  M.M.'s parents objected to several features of this placement, and on March 8, 2013, M.M.'s parents filed an administrative due process complaint with DCPS, alleging various violations of the IDEA.

In their due process complaint, the parents alleged that DCPS had not properly implemented M.M.'s individualized education program ("IEP") during part of the 2012-13 school year.  Due Process Compl. 12 (AR 16).  They also alleged that the IEPs developed in November 2012 and February 2013 were inappropriate and procedurally defective.  Id.  The parents believed that these problems had caused delays in M.M.'s verbal, social, and behavioral skills.  Id. at 7, 11 (AR 11, 15).  The parents requested, as a remedy for these alleged violations of the IDEA, that DCPS be ordered to place and fund M.M. at a separate day school for children with autism.  Id. at 12 (AR 16).

The parents' concerns were considered at an administrative due process hearing held on May 8 and May 9, 2013.  HOD 1 (AR 898); see also May 8 Tr.; May 9 Tr.  On May 28, 2013, the hearing officer issued his decision.  HOD 1 (AR 898).  The hearing officer found that M.M.'s parents had not established that M.M.'s IEPs were inappropriate or improperly developed, or that the educational services provided at Tyler as of May 2013 were inappropriate.  Id. at 19-27 (AR 916-24).  The hearing officer concluded, however, that DCPS had failed to

3

properly implement M.M.'s IEP during the first several months of the 2012-2013 school year, thus denying M.M. a free and appropriate public education ("FAPE"), required by statute, during that time period. Specifically, the hearing officer found that Tyler did not provide a special education teacher in M.M.'s classroom for several months, id. at 24-26 (AR 921-23), and failed to collect Applied Behavior Analysis ("ABA") data, as required by M.M.'s IEP. Id. The hearing officer also found that the Tyler staff had corrected these problems by the date of the hearing, but he ordered DCPS to provide compensatory education to M.M., in order to remedy the harm resulting from the missed services. Id. at 29 (AR 926). The hearing officer directed DCPS to place M.M. for one year at a private school that met the following criteria: a school that primarily provided services to students with autism; that used ABA methodology; that provided one-to-one instruction; and that held a valid certificate of approval from the Office of the State Superintendent of Education. Id. The hearing officer also directed DCPS to convene a placement meeting within 60 calendar days of that order, so that the District and the parents could determine an appropriate private school for M.M. Id.

On May 30, 2013, only a few days after this HOD was issued, M.M.'s parents notified DCPS that M.M. had been accepted at Ivymount, a private school in a Maryland suburb of Washington, D.C., which met the criteria set forth in the HOD. R&R 3. The parents requested that DCPS issued a Prior Written Notice to Ivymount and indicated that they were willing to waive their right to a placement meeting. R&R 3-4.

The following week, on June 7, 2013, DCPS advised M.M.'s parents that it intended to appeal the HOD and would not be implementing the HOD pending the appeal. See Email exchange between Kimberly Glassman and Maya Washington, PI Mot., Ex. 4 at 1. And indeed, DCPS did not take any steps in June 2013 to comply with the HOD. R&R 5. Fearing

that M.M. would lose his spot at Ivymount, M.M.'s parents enrolled him at Ivymount themselves and began paying his tuition there. R&R 4; see PI Mot., Ex. 5-3. The parents then filed a motion for a preliminary injunction in Blackman v. District of Columbia, Civil Action No. 97-1629, seeking reimbursement for tuition and costs, as well as placement and funding at Ivymount for the 2013-14 school year. PI Mot. 23.[2]

The Court referred the parents' motion for preliminary injunction to Special Master Elise Baach. Minute Order dated July 1, 2013.[3] On July 2, 2013, the District filed its appeal of the May 29, 2013 HOD, Civil Action No. 13-1008.

The District did not immediately seek a stay of the HOD. Instead, it has been the District's position that implementation of the HOD is automatically stayed during the pendency of the appeal. PI Opp'n 16-17; Stay Mot. 8-13. According to the District, the HOD directs DCPS to change M.M.'s "current educational placement" in a manner inconsistent with his IEP.

---

[2] When there is a dispute as to whether a HOD must be implemented pending an appeal in federal court, such dispute typically is resolved in the civil action in which the appeal has been brought. See, e.g., District of Columbia v. Oliver, --- F. Supp. 2d ----, 2013 WL 6000889, at *2 (D.D.C. 2013); Friendship Edison Pub. Charter Sch. Chamberlain Campus v. Suggs, 562 F. Supp. 2d 141, 143 (D.D.C. 2008). At the time that the parents filed their motion for injunctive relief, however, the District had not yet filed its appeal; there was no open case in which the parents could file a motion for such relief.

[3] The Blackman class action arose, in part, to address the recurrent problem of DCPS failing to fully and timely implement hearing officer determinations that were favorable to students. Blackman v. District of Columbia, Civil Action No., 97-1629, Dkt No. 81 at 2 (D.D.C. June 3, 1998). Thereafter the Court granted summary judgment to class plaintiffs on the issue of liability, id. at 14-15, 21, and counsel began mediation in an effort to agree upon a mutually acceptable remedial plan. Pending resolution of the case the Court assumed that "in the most severe cases, where irreparable injury is threatened, . . . the District would not ignore its obligations to take [remedial] action . . . . Unfortunately, the Court's confidence [was] misplaced," Blackman v. District of Columbia, 185 F.R.D. 4, 5 (D.D.C. 1999), and numerous motions for preliminary injunction were filed. Id. at 6. Because of the callous attitude of the District of Columbia towards the special needs children who filed said motions, id. at 6-7, the Court appointed a Special Master, Elise Baach, to assist the Court in reviewing these requests for immediate injunctive relief.

PI Opp'n 16-17. Under such circumstances, asserts the District, DCPS was required to maintain M.M. at Tyler under the "stay-put" provision of the IDEA. Id.

In the preliminary injunction proceedings before the Special Master, the Special Master found this argument to be unpersuasive and contrary to all legal precedent, R&R 8-9, and, as is discussed *infra* at 12-15, there is no doubt she was correct. Assessing whether the parents had met their traditional four-part test for preliminary injunctions, the Special Master found that the parents were substantially likely to establish that the District had violated the IDEA by failing to comply with the HOD. Id. at 12-13. The Special Master noted, however, that irreparable harm to M.M. was not clear. Id. at 14. Because the services ordered in the HOD were compensatory education services intended to make up for IDEA violations that occurred in the past, "one could reasonably argue that the compensation for services missed . . . could be provided at some point down the line with no harm to M.M." Id. The Special Master therefore recommended that the District be permitted to file a stay motion prior to the Court's ruling on injunctive relief. Id. at 16.

The District subsequently filed objections to the Report and Recommendations, but it also filed a motion to stay the HOD pending the outcome of its appeal. The parents oppose the District's stay motion, and urge the Court to grant their preliminary injunction motion.

## II. THE DISTRICT IS ENTITLED TO A PROSPECTIVE STAY OF THE HOD

As noted, the District requests that this Court stay the May 29, 2013 HOD. A court may stay an administrative order if the movant demonstrates that the circumstances justify a stay pending appeal. See Nken v. Holder, 556 U.S. 418, 433-34 (2009) (citing Clinton v. Jones, 520 U.S. 681, 708 (1997)). When considering a motion for a stay, as with other temporary injunctive relief, a Court must evaluate (1) the movant's likelihood of success on the

6

merits; (2) whether the movant will suffer irreparable injury absent a stay; (3) whether the issuance of a stay is likely to injure others, including any party opposing the stay; and (4) the public interest. Id. at 434 (citing Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).[4] For the reasons set forth below, the Court finds that the District has met its burden to warrant a stay.

*A. Likelihood of Success on the Merits*

The District maintains that on appeal, it will be able to show (1) that the hearing officer erred in concluding that DCPS denied M.M. a FAPE; and (2) that the hearing officer's award of compensatory education was inappropriate. Stay Mot. 15-16.

The Court is not persuaded by the District's first argument. The hearing officer's finding that DCPS failed to provide certain services during the first part of the 2012-13 school year appear to be supported by the record. See HOD 12, 14-15, 24-25 (AR 909, 911-12, 921-22); AR 365 (noting departure of special education teacher). The Court therefore cannot conclude, at this preliminary stage, that DCPS is likely to show that the hearing officer erred in finding a denial of a FAPE.

The Court agrees with the District, however, that the compensatory education award likely was inappropriate. "[C]ompensatory education involves discretionary, prospective, injunctive relief crafted . . . to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student." Reid

---

[4] In the preliminary injunction context, these factors traditionally have been evaluated on a "sliding scale," such that if a movant makes a particularly strong showing on one factor, then he or she need not necessarily make a strong showing on another factor. See Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291-92 (D.C. Cir. 2009). Recently, however, the D.C. Circuit has suggested that the likelihood of success and irreparable harm factors each are independent requirements, and that temporary injunctive relief could not be awarded unless the movant shows both a likelihood of success and a likelihood of irreparable harm. Sherley v. Sebelius, 644 F.3d 388, 392-93 (D.C. Cir. 2011). The Court need not decide here which approach is proper, as the District prevails under either approach.

ex rel. Reid v. District of Columbia, 401 F.3d 516, 523 (D.C. Cir. 2005) (quoting G. ex rel. RG v. Fort Bragg Dependent Sch., 343 F.3d 295, 309 (4th Cir. 2003)). In specifying a compensatory education award, the hearing officer must undertake an inquiry that is "fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." Reid ex rel. Reid v. District of Columbia, 401 F.3d at 524.

In this case, however, there is no evidence that the hearing officer undertook such a careful analysis of the harm to M.M. caused by the missed services. Nor did he discuss how the services awarded – a one-year placement at a private school that primarily serves autistic children – would address the deficits caused by the school system's past failures. See HOD 29 (AR 926).[5] Such a decision is entitled to little deference by the Court. Reid ex rel. Reid v. District of Columbia, 401 F.3d at 521 ("[T]he district court, obligated by IDEA to ensure that relief set forth in the administrative award was 'appropriate,' could not simply rely on the hearing officer's exercise of discretion.").

The District makes strong arguments as to why the compensatory education award ordered here is not adequately tailored to the deficiencies that resulted from DCPS' alleged failures. As the District notes, M.M.'s IEP calls for "specialized instruction for 25 hours per week including speech-language pathology four hours per month, and occupational therapy four hours per month outside of general education, with ABA instruction, a low student-teacher

---

[5] The hearing officer did discuss at length why a funded placement at a particular school, the Trellis School, was not an appropriate compensatory education award. HOD 28-29 (AR 925-26) (concluding that the cost of the Trellis School, its lack of certain certifications, and its distance counseled against a placement). But an explanation of why a certain compensatory education award was not appropriate does not fulfill the requirement that the hearing officer explain how the award given is appropriate.

8

ratio, and 'possible opportunities for exposure to typically developing peers' in a school in his neighborhood." Stay Mot. 12 (citing AR 232, 242, 244). According to the hearing officer, the District failed to implement this IEP when it maintained M.M. in a classroom that was often missing a special education teacher, and where ABA instruction was incomplete. By the end of the 2012-13 school year, however, the IEP was being implemented properly: there was a special education teacher in place, such that M.M. often was provided with one-to-one instruction, and ABA instruction was being properly administered. HOD 15, 20, 23 (AR 912, 917, 920); see also AR 366-67. The only features that the compensatory education awarded by the hearing officer seems to add to M.M.'s educational program are the requirements that M.M. be educated (1) in a private school that (2) primarily serves students with autism. The Court sees little reason to believe that these features will serve to compensate M.M. for the District's prior failures.[6]

For the foregoing reasons, the Court finds that the District has established a likelihood of success on the merits.

### B. Injury to the District if a Stay is Not Granted

The District has made a sufficient showing that it will suffer irreparable injury if a stay is not granted and the District ultimately prevails on its appeal. First, any tuition or related costs paid by the District to Ivymount would not be recoverable by the District. As the D.C.

---

[6] The District contends that this placement in fact violates the IDEA's "least restrictive environment" requirement because it does not provide M.M. with adequate access to nondisabled peers. See 34 C.F.R. § 300.114; 34 C.F.R. § 300.116(c),(e); 34 CFR § 300.117. The Court does not agree that the placement is necessarily violative of the IDEA, as the "least restrictive environment" requirement does not apply to a parent-initiated placement. See C.B. ex rel. B.B. v. Special Sch. Dist. No. 1, Minneapolis, Minn., 636 F.3d 981, 991 (8th Cir. 2011); Warren G. ex rel. Tom G. v. Cumberland County Sch. Dist., 190 F.3d 80, 84 (3d Cir. 1999); Cleveland Heights-University Heights City Sch. Dist. v. Boss By and Through Boss, 144 F.3d 391, 400 (6th Cir. 1998). The Court agrees, however, that the HOD lacks any explanation of how a school that primarily serves autistic students – and thus restricts access to nondisabled peers – will assist M.M.

Circuit has noted, "[i]t would be absurd to imagine a trial court ordering parents to reimburse a school system for the costs of a hearing examiner's erroneous placement of their child[.]" Jenkins v. Squillacote, 935 F.2d 303, 307 n.3 (D.C. Cir. 1991); see also District of Columbia v. Vinyard, 901 F. Supp. 2d 77, 90-91 (D.D.C. 2012). Courts have recognized such non-recoverable economic costs as irreparable harm. See District of Columbia v. Vinyard, 901 F. Supp. 2d at 90; Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt, 704 F. Supp. 2d 50, 53 (D.D.C. 2010).

Second, a stay is appropriate to preserve the District's right to appeal what it considers to be an erroneous decision. As the District correctly observes, see Stay Mot. 19-20, the District's claim on appeal may become moot if a stay is not granted. The parties' cross-motions for summary judgment have only recently been filed, and briefing is scheduled to run through February 2014. As Judge Kollar-Kotelly concluded in Vinyard, preserving the right of appeal is a meaningful consideration. See District of Columbia v. Vinyard, 901 F. Supp. 2d at 90 ("The Court finds compelling the District's arguments that a stay of these holdings is necessary to preserve the District's meaningful right to appeal the HOD.").

The Court therefore agrees that the District will likely suffer irreparable harm in the form of both economic injury and the potential loss of its ability to effectively appeal the HOD if the stay is not granted.

*C. Irreparable Injury to M.M.*

Although the District has established a likelihood of success and irreparable injury, a preliminary injunction will not issue if these considerations are outweighed by the risk of irreparable injury to M.M. But here, the risk of such injury to M.M. is low. The hearing officer indicated that DCPS could properly implement M.M.'s IEP at Tyler:

10

> The testimony and evidence indicate that the student's IEP has been appropriately implemented since he was moved to his new classroom. Ms. Schneider is a certified special education teacher and BCBA, trained to implement ABA practices. She is appropriately collecting data and adjusting the student's programming as necessary to ensure he accesses his education. Petitioners have not challenged the implementation of the student's IEP since he was moved to the new classroom in late January.

HOD 26 (AR 923). The Special Master therefore found that the risk of irreparable injury to M.M. was far from certain. R&R 14.

The parents assert that compensatory education should be implemented as soon as possible, citing expert testimony that "there is a window for children to develop 'learning to learn skills.'" Opp'n Stay Mot. 18 (citing May 8 Tr. at 62-63). But there is nothing in the record to suggest that a delay of a few months will harm M.M., in light of the similarities between the services available at Ivymount and those previously provided at Tyler.

### D. Public Interest

Public interest considerations weigh slightly in favor of a stay. As the District notes, it is "in the public interest for government costs to be minimized." Stay Mot. 19 (quoting Washington v. District of Columbia, 530 F. Supp. 2d 163, 173 (D.D.C. 2008)).

M.M.'s parents press the Court to consider the public interest in ensuring that HODs are implemented in a timely fashion. See Blackman v. District of Columbia, 277 F. Supp. 2d 71, 82 (D.D.C. 2003). This consideration does reflect a bona fide public interest, of course, which is precisely why the District must meet the burdensome four-factor test to obtain a stay of a HOD. But this consideration is not an independent reason for denying a stay.

Because the Court finds that the District has shown a substantial likelihood that it will prevail on appeal, that the District faces irreparable injury if a stay is not granted, that the

risk of irreparable injury to M.M. is low, and that public interest considerations weigh slightly in favor of a stay, a prospective stay will be issued.

### III. THE DISTRICT WAS REQUIRED TO COMPLY WITH HOD PRIOR TO STAY

Although the District has shown that a *prospective* stay of the May 29, 2013 HOD is warranted, this grant of a stay does not excuse DCPS' failure to comply with the HOD during the first part of the 2013-14 school year. As discussed below, DCPS was obligated to place and fund M.M. at Ivymount or a similar school unless and until the HOD was stayed; but the District did not promptly seek a stay. The Court therefore finds that the District must reimburse M.M.'s parents for the tuition and related costs expended at Ivymount during the first part of the 2013-14 school year.

The decision of a hearing officer is deemed "final" unless and until it is vacated or modified by the Superior Court of the District of Columbia or by the appropriate federal court. 20 U.S.C. § 1415(i). "While the IDEA does not specifically state that DCPS is required to implement the determinations of hearing officers or implement the relief promised in settlements, there is little doubt that the statute creates a clear obligation on the District of Columbia to do so." Blackman v. District of Columbia, Civil Action No. 97-1629, Dkt. No. 81 at 14 (June 3, 1998); see also Porter v. Board of Trustees of Manhattan Beach Unified Sch. Dist., 307 F.3d 1064, 1069 (9th Cir. 2002); Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 278 (3d Cir. 1996).

The District makes the novel argument that it was required to ignore the hearing officer's determination pursuant to the "stay-put" provision of the IDEA. PI Opp'n 16-17; Stay Mot. 8-13. The "stay-put" provision of the IDEA provides, in relevant part:

12

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child[.]

20 U.S.C. § 1415(j).

This subsection provides that when a special needs student challenges a change in his "educational placement," the agency must maintain the student in his current educational placement "through both administrative and judicial proceedings, including an appeal from an administrative decision following a due process hearing." District of Columbia v. Vinyard, 901 F. Supp. 2d at 83 (citing 34 C.F.R. § 300.518(a)). Courts have interpreted the stay-put provision as an automatic injunction, akin to the automatic stay in bankruptcy proceedings. See District of Columbia v. Vinyard, 901 F. Supp. 2d at 83 (collecting cases).

But stay-put relief is available only to students and their parents – *not to the school system*. As this Court has previously held:

> There is, of course, a provision of the IDEA that allows the child to opt to "stay put"—to remain in the then-current educational placement—during the pendency of further proceedings. *See* 20 U.S.C. § 1415(j). *Nowhere in the IDEA, however, is there a corresponding right of an education provider to decline to implement a Hearing Officer Decision in a student's favor automatically,* without seeking a stay of that Decision from either the Hearing Office or the Court in which further proceedings have been commenced under 20 U.S.C. § 1415(i)(2).

Friendship Edison Pub. Charter Sch. Chamberlain Campus v. Suggs, 562 F. Supp. 2d 141, 143 (D.D.C. 2008) (emphasis added); see also District of Columbia v. Vinyard, 901 F. Supp. 2d at 86-87; Shelton v. Maya Angelou Pub. Charter Sch., 578 F. Supp. 2d 83, 102 (D.D.C. 2008).

The conclusion that a school system cannot avail itself of the stay-put provision is mandated by the plain language of the statute, which requires that a student's placement be

maintained "unless the State or local educational agency and the parents otherwise agree." 20 U.S.C. § 1415(j). It is established that when a hearing officer awards relief requested by the parents, the hearing officer's decision constitutes an agreement between the State and the parents sufficient to change the placement of a child. See 34 C.F.R. § 300.518 ("If the hearing officer in a due process hearing . . . agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State and the parents[.]"); School Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359, 372 (1985) ("The [administrative bureau]'s decision in favor of the [parents] . . . would seem to constitute agreement by the State to the change of placement."); District of Columbia v. Vinyard, 901 F. Supp. 2d at 85. Here, the hearing officer granted the parents' request to place M.M. at a private school that primarily serves students with autism for the 2013-14 school year, and this order constituted an agreement to a temporary change of M.M.'s educational placement. See District of Columbia v. Vinyard, 901 F. Supp. 2d at 85-86 (recognizing District's obligation to maintain special needs student at specific private school where hearing officer had directed District to place and fund student pending development of IEP).

Although the District believed that the hearing officer's decision was incorrect, the District was not free to simply ignore its obligation to comply with the HOD. Under these circumstances, the parents were within their rights to enroll M.M. at Ivymount, and are entitled to reimbursement for their expenses. See 20 U.S.C. § 1415(i)(2)(C)(iii) (authorizing court to grant relief "as the court determines is appropriate" in IDEA action); Forest Grove School Dist. v. T.A. 557 U.S. 230, 246 (2009) (recognizing that the IDEA "authorizes courts to order reimbursement of the costs of private special-education services in appropriate circumstances."); District of Columbia v. Vinyard, 901 F. Supp. 2d at 91 (ordering reimbursement of tuition

expended by parents); Order, <u>Blackman v. District of Columbia</u>, Civil Action No. 92-1629, Dkt. No. 2305 at 2 (January 9, 2013) (ordering reimbursement of expenses resulting from DCPS' failure to timely implement relevant HOD).[7]

IV. CONCLUSION

For the reasons set forth above, the Court finds that the District has demonstrated that a prospective stay of the May 29, 2013 HOD is warranted. This grant of a stay, however, does not excuse DCPS' failure to comply with the HOD during the first part of the 2013-14 school year. DCPS was required to place and fund M.M. at Ivymount or a similar school until a stay was sought and issued. Accordingly, the District must reimburse M.M.'s parents for the tuition and related costs expended at Ivymount between July 8, 2013 and February 14, 2014.

An appropriate Order accompanies this Opinion.

/s/_____
PAUL L. FRIEDMAN
DATE: January 30, 2014                      United States District Judge

---

[7] The District asserts that the Court lacks authority to entertain the parents' motion for preliminary injunction, arguing that M.M. is not a member of the <u>Blackman/Jones</u> class. The Court notes that because it has jurisdiction over the District's motion for a stay, this argument is moot. Even if it were not, however, the Court rejects the District's argument. The <u>Blackman/Jones</u> class action arose, in part, to address the recurrent problem of the District failing to implement HODs that were favorable to students. <u>Blackman v. District of Columbia</u>, Civil Action No., 97-1629, Dkt. No. 81 at 2 (D.D.C. May 14, 1998). The <u>Jones</u> subclass includes students for whom DCPS fails to provide compensatory education ordered by a hearing officer. See <u>Blackman v. District of Columbia</u>, 454 F. Supp. 2d 15, 18-19 (D.D.C. 2006) ("D.S. is a member of the <u>Jones</u> subclass, because DCPS failed to devise a compensatory education plan . . . despite the conclusion of the Hearing Officer that she was entitled to compensatory education.").

15